FILED
United States Court of Appeals
Tenth Circuit

May 10, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENGH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BOUNTAEM CHANTHADARA,

Defendant - Appellant.

No. 10-3057

(D. Kansas)

(D.C. Nos. 6:09-CV-01357-MLB and
6:94-CR-10128-MLB-1)

---

ORDER DENYING
CERTIFICATE OF APPEALABILITY[*]

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this matter. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant and appellant Bountaem Chanthadara, a federal prisoner proceeding *pro se*, seeks a certificate of appealability ("COA") to enable him to appeal the denial of his 28 U.S.C. § 2255 motion for a new trial or dismissal of

---

[*]This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the charges against him. For the following reasons, we deny him a COA and dismiss this matter.

## BACKGROUND

In 1996, Mr. Chanthadara was convicted of robbing a restaurant in Wichita, Kansas, and committing a murder in connection therewith. He was initially sentenced to twenty years' imprisonment for the robbery and to death for the murder. On appeal, this court affirmed the convictions but reversed the death sentence and remanded for resentencing. United States v. Chanthadara, 230 F.3d 1237 (10th Cir. 2000), cert. denied, 534 U.S. 992 (2001). In 2002, the district court resentenced Mr. Chanthadara to life in prison without parole on the murder count and left the twenty-year robbery sentence unchanged. Mr. Chanthadara did not appeal that new sentence.

Mr. Chanthadara filed this § 2255 petition in November 2009. He claimed that his attorney had received a letter from the government in 2008 advising him of the government's recent discovery of an FBI scientist who gave false ballistics testimony at his trial. The district court assumed that the § 2255 motion was timely under the "newly discovered evidence" exception to an otherwise untimely motion and concluded that the information about the false testimony was merely impeaching evidence and would not have been significant enough in light of the overwhelming evidence of guilt to produce an acquittal at a new trial. The

district court accordingly denied Mr. Chanthadara's § 2255 motion. He seeks to appeal that denial.

**DISCUSSION**

The facts relating to Mr. Chanthadara's conviction are fully set out in our opinion in his direct appeal and need not be repeated here. See Chanthadara, 230 F.3d at 1244-46. On November 8, 2008, Gary Peterson, a lawyer who had represented Mr. Chanthadara at trial and on appeal, received a letter dated April 15, 2008, revealing that an FBI scientist, Kathleen Lundy, had provided false expert testimony concerning ballistics at Mr. Chanthadara's trial. There is no dispute that the letter correctly revealed the false testimony.[1] See Berry, 2007

---

[1]Ms. Lundy admitted to falsely testifying in another case. That case described the circumstances as follows:

> In 1999, Kathleen Lundy took a tour of the Winchester plant that manufactured bullets and made a note that in 1996 the factory switched from purchasing blocks of lead that were required to be remelted before being made into bullets to purchasing billets which did not need to be remelted. Ragland v. Commonwealth, 191 S.W. 3d 569, 580-81 (Ky. Sup. Ct. 2006). In the summer of 2001, in a Colorado case, she testified to this fact. Id. at 581. Subsequently, she was advised that her handwritten note was in error and that the factory had switched to purchasing billets in 1986, not 1996. Ms. Lundy notified the Colorado prosecutor of the error. Id. In January 2002 she testified at a Daubert hearing to the 1996 date in the case of Ragland v. Commonwealth. She knew the date was an error but did not correct it. Id. At the Ragland trial she was impeached based on this error; she indicated she had misunderstood the question at the Daubert hearing and that she knew the date was in error when she testified to it. Id. She pled guilty to making a false statement under

(continued...)

WL 4225068, at *2 ("Ms. Lundy's perjury was publicly announced by the Associated Press on July 25, 2002[.]").  Additionally, on September 2, 2005, the FBI announced that it would no longer use the compositional analysis of bullet lead ("CABL"), which was the method Ms. Lundy used in Mr. Chanthadara's case to link the murder weapon to him.

Mr. Peterson immediately sent the letter dated April 15, 2008, to Mr. Chanthadara, although it is not clear exactly when Mr. Chanthadara received the letter.  On November 10, 2008, Mr. Peterson sent a letter to the United States Attorney's Office, but never received a reply.  Mr. Chanthadara ultimately filed this § 2255 motion on November 13, 2009.

The government argued to the district court that Mr. Chanthadara's motion was untimely, whether it is construed as a Fed. R. Crim. P. 33(b)(1) motion for a new trial or a § 2255 motion to vacate or set aside his sentence.  The district court assumed the motion's timeliness:  "Because Mr. Peterson did not receive any response to his November 10, 2008, letter requesting additional information and because it is unclear what date [Mr. Chanthadara] received a copy of the

_____

[1](...continued)
oath, a Class B misdemeanor in Kentucky.  Id.  A new trial was granted to Mr. Ragland.

Berry v. United States, 2007 WL 4225068, at *4 (E.D. Wash. Nov. 27, 2007) (unpublished).

-4-

government's April 15 letter, the court will assume, without deciding, that defendant's § 2255 motion is timely." Mem. & Order at 2-3, R. Vol. 1 at 125-26.

The district court accordingly went on to analyze the merits of Mr. Chanthadara's claim that Ms. Lundy, "an FBI scientist and official of the U.S. Department of Justice, gave untrue, misleading and unreliable testimony during [his] trial concerning bullet lead analysis allegedly linking [him] to the charged offenses, in violation of the Due Process Clause of the Fifth Amendment." Id. at 3 (quoting § 2255 Motion at 4). The court rejected that claim, concluding in pertinent part as follows:

> The court finds that Ms. Lundy's subsequent perjury and the fact that the FBI no longer uses CABL to be merely impeaching evidence. Regardless, there is no claim, and no evidence, that the government was aware of the falsity until long after [Mr. Chanthadara's] trial. [Mr. Chanthadara] cannot claim that the government knowingly and intentionally used the falsity to obtain a conviction. . . .
>
> Moreover, [Mr. Chanthadara] has not claimed, and cannot claim, that [the] evidence was so prejudicial that it affected the judgment of the jury. The government's case-in-chief lasted four days. The government presented 24 witnesses, including rebuttal witnesses. Some of these witnesses saw [Mr. Chanthadara] carry the 9mm pistol, which was later determined to be the murder weapon, point the gun towards his own head after Mrs. Barbara Sun was shot, and then throw the gun into a river. [Mr. Chanthadara's] palm print was also found on the broken glass from the display case at the Mandarin Chinese Restaurant.
>
> The transcript of the government's witnesses' testimony totaled approximately 723 pages. Ms. Lundy's trial testimony consisted of 10 transcript pages. Her testimony was short and concerned only one piece of the government's overwhelming

evidence that established [Mr. Chanthadara's] guilt. Ms. Lundy's testimony could not have been all that significant to the jury such that it would "probably produce an acquittal at a new trial." Therefore, [Mr. Chanthadara] is not entitled to relief under § 2255.

Id. at 5-6. Mr. Chanthadara seeks a COA to appeal that conclusion.

The issuance of a COA is jurisdictional. We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing, Mr. Chanthadara must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2002). Where the district court has rejected a claim on its merits, the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

As the above excerpts indicate, the district court correctly resolved the merits of Mr. Chanthadara's claim. Because we have determined that no jurists of reason would find it debatable whether the district court was correct in denying Mr. Chanthadara's § 2255 petition, we deny his application for a COA and dismiss this matter.

**CONCLUSION**

For the foregoing reasons, we DENY a COA and DISMISS this matter.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge